UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID A. DOWN, *et al.*,    )
                            )
    Plaintiffs,              )
                            )
v.                          )    CASE NO. 3:10-cv-847
                            )
FLAGSTAR BANK, F.S.B.,      )
                            )
    Defendant.               )

## MEMORANDUM OPINION

This matter comes before the court on Defendant Flagstar Bank's Motion to Dismiss (Dkt. No. 5) and Platintiff's Motion to Remand (Dkt. Nos. 7 and 8). This memorandum opinion now follows the Order of this Court dismissing the case and denying the Motion to Remand.

**Background and Procedural History**

Plaintiffs are a homeowner/ borrower couple and Defendant is a mortgage broker. Plaintiffs filed suit in the Circuit Court of Powhatan County, Virginia, relating to fees paid on a home refinance loan initiated in February 2005. The complaint alleges a "bait and switch fraud" whereby the Defendant mortgage broker misrepresented itself as a lender to the prospective home refinance client by means of a Good Faith Estimate (GFE). According to the complaint, it was revealed at the time of closing that the lender was not the broker from whom the Downs had received the GFE, but another party, the First National Bank of Arizona (FNBA). The brokerage arrangement resulted in fees being added on to the value of the loan. Plaintiffs filed a separate action against FNBA and recovered against that bank in a settlement (Complaint ¶11). Defendant removed the current action to federal court on November 22, 2010 pursuant to 28 U.S.C. §1331, 1441 and 1446 under the doctrines of complete federal preemption, substantial federal question, and artful pleading (Notice of Removal, Dkt. No. 1 ¶3). Subsequently,

Plaintiff filed a motion to remand the matter back to the Circuit Court of Powhatan County arguing lack of federal question jurisdiction, lack of preemption, and disputing the allegation of artful pleading. Defendant opposed the motion to remand, and filed a motion to dismiss on the grounds that the fraud claim is preempted by the Home Owner's Loan Act of 1933 (HOLA), 12 U.S.C. §2601, *et seq.* and accompanying regulations, 12 C.F.R. §560.1, *et seq.*, and the Truth in Lending Act, 15 U.S.C. §1601, and for failure to state a claim for fraud.

**Motion to Remand & Motion to Dismiss**

The Motion to Remand this matter to the Circuit Court of Powhatan County was denied on the grounds that the case was properly removed as the subject matter of the plaintiff's state law claim is totally subsumed by federal law applicable to the mortgage lending industry. Plaintiff initially filed the case in state court, and now argues that Flagstar had no legitimate jurisdictional basis on which to remove this case to federal court. Actions filed in state court may be removed in cases over which "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). This original jurisdiction includes "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The propriety of Flagstar Bank's removal of the state court case depends on whether the claims arise under federal law. *Pinney v. Nokia, Inc.* 402 F.3d 430, 441 (4th Cir. 2005), quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994).

Generally, plaintiffs may avoid federal jurisdiction by crafting a claim that relies exclusively on state law. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). In this case, the Downs present a claim for common law "bait and switch" fraud, which they allege was perpetrated by a mortgage broker posing as a lender in order to extract fees from the borrower. However, this court must also determine whether "the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded ... claims." *Pinney v. Nokia, Inc.* 402 F.3d 430, 441 (4th Cir. 2005). The burden of establishing jurisdiction in federal court rests with the party invoking the removal statute. When removal is challenged, as here, the removing party bears the burden of demonstrating that removal jurisdiction is proper. *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008). The removing party must establish two elements: "(1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial." *Pinney*, 402 F.3d at 442. The removing party, defendant Flagstar Bank, has met that burden here.

**Plaintiff's Claim is Preempted by HOLA**

The Plaintiffs' claim is preempted by the Home Owners Loan Act (HOLA), 12 U.S.C. §1461 *et seq.* and relevant regulations, 12 C.F.R. §560.2, *et seq.* The language of the Complaint attempts, unsuccessfully, to carve out a "Limitation on Cause of Action," claiming that the Plaintiff seeks recovery "on a theory of disgorgement and not on grounds of compensatory damages." (Complaint ¶11). Considering the substance of Plaintiffs' claims, however, this Court finds that the absence of federal questions on the face of the complaint appears merely because the name of the relevant federal law is left out.

HOLA empowers the Office of Thrift Supervision ("OTS") to regulate federal savings and loan associations and to preempt state laws which may conflict with those regulations. HOLA empowers the Office of Thrift Supervision ("OTS") "to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations to preempt conflicting state law." *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 642 (7th Cir.2007). The preemption regulations OTS promulgated pursuant to this power provide that:

OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....12 C.F.R. § 560.2(a).

OTS outlined the proper steps for a court to determine whether preemption applies:

When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption. 61 Fed. Reg. 50951-01.

Beginning with the first step of the analysis under §560.2(b), we determine whether the type of law in question is listed in paragraph (b). Preempted laws under paragraph (b) include those related to "disclosure and advertising, including laws requiring specific statements, information or other content," §560.2(b)(9) and (b)(10) "processing, origination, servicing, sale or purchase of, or investment or participation in mortgages." 12 C.F.R. §560.2(b)(9)-(10). Other laws specifically preempted include those related to terms of credit, escrow accounts, and other lending matters. *See* 12 C.F.R. §560.2(b)(1)-(13). In this case, the Downs plead a common law fraud claim, alleging that they were misled as to the identity of the lender, and not directly misled with regard to any of required disclosures or laws requiring specific statements. Plaintiffs claim that the defendant mortgage broker posed as a lender and fraudulently induced them into entering into a loan agreement that they would not have otherwise agreed to.[1]

---

[1] Though this case will not be remanded, the fact that the Plaintiff had the opportunity to review the loan documents, inspect the documents, and understand that First Bank of Arizona was the lender and Flagstar the broker at the time of closing would be fatal to the success of a fraud based claim in state court.

Inasmuch as Plaintiffs' claim may not be covered by §560.2(b), we reach the second step of the analysis where the question becomes whether the exception for tort law under 12 C.F.R. §560.2(c) applies to what is alleged as a common law fraud claim. OTS expressly provided, in section 560.2(c), categories of state laws that "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)...." 12 C.F.R. § 560.2(c). The state laws generally excepted from preemption by HOLA are:

(1) Contract and commercial law;

(2) Real property law;

(3) Homestead laws specified in 12 U.S.C. 1462a(f);

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds:

(i) Furthers a vital state interest; and

(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section. 12 C.F.R. § 560.2(c)(1)-(6).

Within the narrow interpretation envisioned by the federal regulations, which are "intended to be interpreted narrowly," with "any doubt [] resolved in favor of preemption," this court finds that the exception does not apply here. *See* 61 Fed. Reg. 50951-01. State laws, including tort laws, are not preempted to the extent that they "only incidentally affect the lending operations of Federal savings associations" 12 C.F.R. §560.2(c). This action arises from a loan governed by HOLA and falling within the preemption envisioned by that statute, because the

relief sought necessarily depends on a substantial question of federal law, namely, "disgorgement" to be measured with reference to disclosures made at the time of the loan.

Here, the Downs obviously cannot seek rescission of their home refinance contract against the broker based on an allegation of failure to disclose fees, nor do they explicitly seek reliance damages for fraud. Rather, they seek to "disgorge" the defendant of fees, including a brokerage fee of $3,910 and yield spread premium of $1,721.25. (Complaint, ¶9). Critically, these numbers are calculated with reference to fees related to the origination of the Plaintiff's loan, and implicate the preemption provisions of 12 C.F.R. §§560.2(b)(9) and (10). This court concludes that it is inappropriate, if not impossible, to dissect each step in a lending activity that is covered under HOLA, particularly if such dissection is necessary to extricate a recovery amount based on fee disclosures made in connection with a covered transaction. As noted, Plaintiff's attempt to characterize the relief they seek as "disgorgement" rather than compensatory damages is unavailing.

A "yield spread premium" is a term of art that describes a sum paid by a mortgage lender to a broker. The lender recoups this fee by charging the borrower a higher interest rate. The complaint in this case alleges "In connection with the said loan, Flagstar [Defendant] entered into an agreement with FNBA pursuant to which FNBA paid to Flagstar, outside of the closing of said loan, a yield spread premium of $1,721.5. FBNA paid the said yield spread premium in compensation to Flagstar in return for Flagstar inducing the Downs to enter into the loan at a higher interest rate that [sic] the "par rate" which would have been the rate FBNA would have been willing to make the loan if the Downs had dealt directly with FNBA without going through Flagstar as its agent." (Complaint ¶8). A yield spread premium is calculated by comparing the rate of the loan at closing with the par rate offered on the loan in question at the time of closing.

Such lender payments to brokers are not unlawful *per se*, but under RESPA the fees associated with loans such as the Downs' must be disclosed to the borrower.

The yield spread premium must be calculated with reference to a disclosure required by the Real Estate Settlement Procedures Act (RESPA) in connection with activities that occurred at the closing of a loan clearly covered by federal regulation. Congress enacted RESPA to ensure that consumers are provided with greater and more timely information on the nature and costs of the real estate settlement process and "are protected from unnecessarily high settlement charges caused by certain abusive practices ...." 12 U.S.C. § 2601(a). The purpose of RESPA was to create a system that would result in "more effective advance disclosure to home buyers and sellers of settlement costs" and "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(1) & (2). Regarding business referrals, 12 U.S.C. § 2607(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally regulated mortgage loan shall be referred to any person.

Regarding fees, salaries, compensation, or other payments, § 2607(c) provides:

> Nothing in this section shall be construed as prohibiting ... (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed, ... (4) affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge or range of charges generally made by the provider to whom the person is referred (i) in the case of a face-to-face referral or a referral made in writing or by electronic media, at or before the time of the referral (and compliance with this requirement in such case may be evidenced by a notation in a written, electronic, or similar system of records maintained in the regular course of business); (ii) in the case of a referral made by telephone, (and in such case an abbreviated verbal disclosure of the existence of the arrangement and the fact that a written disclosure will be provided within 3 business days shall be made to the person being referred during the telephone referral); or (iii) in the case of a referral by a lender (including a referral by a lender to an affiliated lender), at the time the estimates required under section 2604(c) of this title are provided

7

(notwithstanding clause (i) or (ii)); and any required written receipt of such disclosure (without regard to the manner of the disclosure under clause (i), (ii), or (iii)) may be obtained at the closing or settlement (except that a person making a face-to-face referral who provides the written disclosure at or before the time of the referral shall attempt to obtain any required written receipt of such disclosure at such time and if the person being referred chooses not to acknowledge the receipt of such disclosure at that time, that fact shall be noted in the written, electronic, or similar system of records maintained in the regular course of business by the person making the referral), (B) such person is not required to use any particular provider of settlement services, and (C) the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the ownership or franchise relationship....

If a plaintiff were permitted to allege fraud and to receive the return of fees required to be disclosed by RESPA in state court, state courts would be left to interpret the RESPA statute and regulations, analyzing a defendant's compliance in each individual case- and this is precisely what federal preemption intends to avoid.

The Eastern District of California court considered similar claims by a home loan borrower and found that the borrower's claims that were dependent upon nondisclosure of a broker's role in a refinance loan were preempted by federal law. *Bassett v. Ruggles*, 2010 WL 1525554 (E.D.Cal., April 15, 2010). The Plaintiff in *Bassett* alleged that "By virtue of the scheme between Flagstar and IGS [the broker], IGS was able to market itself to potential residential mortgage consumers claiming that it would obtain mortgages for a flat fee of less than $1,000. IGS and Flagstar did not disclose to the potential customers at any time that Flagstar would secretly pay a kickback to IGS of several thousand dollars when IGS tricked the potential customers into signing loan documents for above par loans." *Id* at *2. In this case, Plaintiffs allege that "Flagstar made such a fraudulent representation to the Downs that it was a lender to induce the Downs to enter into a relationship with Flagstar pursuant to a bait and switch fraud in which Flagstar would later reveal to the Downs that it was acting, in fact, as a mortgage broker and not as a lender." (Complaint ¶4). The *Bassett* court found that the only purpose for an

alleged misrepresentation as to the identity of a loan broker "pertains to the terms of the loan transaction; otherwise the allegation is totally irrelevant." *Bassett v. Ruggles*, 2010 WL 1525554, at *7. Similarly, the Downs' claim for "bait and switch" fraud is irrelevant without reference to the fees related to the loan transaction that Plaintiffs believe they were tricked into paying.

The exception under HOLA's regulation, 12 C.F.R. §560.2(c)(4) for tort law claims does not except the Downs' fraud claim because the representations and the loan transaction are inextricably linked to one another. For these reasons, the motion to remand has been denied and the motion to dismiss granted.


April 4, 2011
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge